UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:25-CV-00151-MEO-DCK

| | |
|---|---|
| ALANDA RICHARDSON,<br><br>Plaintiff,<br><br>v.<br><br>HICKORY PUBLIC HOUSING AUTHORITY BOARD AND CITY OF HICKORY,<br><br>Defendants. | **MEMORANDUM & ORDER** |

**THIS MATTER** is before the Court *sua sponte* as well as on Defendant Hickory Public Housing Authority Board's ("HPHA") Amended Motion to Dismiss Plaintiff Alanda Richardson's Amended Complaint. (Doc. No. 23). For the reasons set forth below, the Court will grant in part and deny in part the Motion.

## I. BACKGROUND

For purposes of the Motion, the Court accepts as true the well-pleaded factual allegations of the Amended Complaint (Doc. No. 19) and recites relevant portions below. *See Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Defendant City of Hickory (the "City") oversaw Defendant HPHA until voting to dissolve it in 2025. (Doc. No. 19 ¶¶ 3, 100). At the time of its dissolution, HPHA consisted of nine individual commissioners, each appointed by the City's Mayor. *See id.* ¶¶ 14, 16. Plaintiff is an African American woman who served as HPHA's CEO for approximately twenty-six years. *Id.* ¶¶ 12–13, 123–126. In June

2023, Plaintiff signed a new employment contract with HPHA that extended her term through mid-2028. *Id.* ¶ 17; *see also* (Doc. No. 19-1 at 1).

In May 2024, the federal Department of Housing and Urban Development ("HUD") informed HPHA that the latter "needed to improve [its] relationship with the City." (Doc. No. 19 at ¶ 37). When HPHA and Plaintiff expressed confusion, HUD explained that the City had placed roughly 6,000 phone calls over the past five years accusing Plaintiff of mismanaging housing resources. *Id.* ¶¶ 39–40. Neither HPHA nor Plaintiff had been aware of these complaints. *Id.* ¶ 41.

Tensions between HPHA and the City continued to escalate in the months that followed. *See id.* ¶¶ 42–85 (describing the fallout). In October 2024, Plaintiff and HPHA executed an addendum to her contract to clarify her compensation in the event of a "Change in Control" or "Abolition of HPHA." *Id.* ¶¶ 18–20, 86; *see also* (Doc. No. 19-2 at 1). Five HPHA commissioners—all of whom were African American—voted to approve the addendum. (Doc. No. 19 ¶¶ 86, 93). The Mayor responded by informing each of those five commissioners that he intended to remove them for ethical misconduct. *Id.* ¶¶ 92–93. All five resigned in protest. *Id.* ¶¶ 96–97. In January 2025, the City Council voted to abolish HPHA altogether. *See id.* ¶ 100. The City accompanied its announcement of HPHA's dissolution with a press release that detailed HPHA's underutilization of federal housing vouchers and accused Plaintiff of spending public funds on her personal expenses. *Id.* ¶¶ 71–74, 101–02. Plaintiff learned of her termination from a local news report. *Id.* ¶ 105.

Plaintiff now seeks damages stemming from Defendants' breach of her employment contract and their "violation[s]" of 42 U.S.C. §§ 1981 and 1983. (Doc. No. 19 at 13, 15). The City filed its Answer (Doc. No. 22) on February 20, 2026. Four days later, on February 24, 2026, HPHA filed the instant Motion (Doc. No. 23).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570; *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court, however, accepts all well-pleaded facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cnty. N. Carolina*, 22 F.4th 412, 416 (4th Cir. 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l*, 932 F.3d at 274. Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (internal quotation marks omitted) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## III. DISCUSSION

HPHA makes three substantive arguments for dismissal: first, that North Carolina law only authorizes lawsuits against a public housing authority, not a public housing authority board; second, that Plaintiff does not state a valid § 1983 claim; and third, that Plaintiff "fails to allege that [HPHA] violated any contract whatsoever." (Doc. No. 24 at 3). The Court addresses these arguments in turn.

### A. Capacity to be Sued

"The capacity of a governmental body to be sued in the federal courts is governed by the law of the state in which the district court is held." *Avery v. Burke Cnty.*, 660 F.2d 111, 114 (4th Cir. 1981) (citing Fed. R. Civ. P. 17(b)). In North Carolina, "in the absence of a statute, the capacity to be sued exists only in persons in being." *Rogers v. Cumberland Cnty. Dep't of Soc. Servs.*, No. 5:20-CV-477-BO, 2020

WL 9216464, at *6 (E.D.N.C. Nov. 24, 2020); *see also McPherson v. First & Citizens Nat'l Bank of Elizabeth City*, 81 S.E.2d 386, 397 (N.C. 1954).

The North Carolina General Statutes establish that a public housing authority "constitute[s] a public body and a body corporate and politic" that may "sue and be sued." N.C. Gen. Stat. § 157-9(a) (2025). HPHA concedes this point. (Doc. No. 24 at 4). But the Amended Complaint names "the Hickory Public Housing Authority Board," not the Hickory Public Housing Authority. (Doc. No. 19 at 1). And because the statute does not authorize lawsuits against a housing authority board, HPHA contends Plaintiff may not sue it here. (Doc. No. 24 at 4). Plaintiff dismisses HPHA's reasoning as "semantic interplay," arguing that the Amended Complaint "makes abundantly clear the entity being sued." (Doc. No. 27 at 6). She states that she "will seek leave to omit the word 'Board'" if necessary. *Id.*

To be sure, the Amended Complaint names two Defendants—"the City of Hickory" and "the Hickory Public Housing Authority Board"—and identifies "the Board of Commissioners" as the entity with which Plaintiff contracted. (Doc. No. 19 ¶¶ 3–4, 15–18). Strictly speaking, HPHA's Board of Commissioners is not HPHA. But in context, the Amended Complaint appears to use labels like "the Board" and "the HPHA" interchangeably. *See id.* ¶ 3 ("Upon information and belief, the Hickory Public Housing Authority Board (hereinafter "HPHA" or "Board") was created by the City of Hickory with the City Mayor appointing the Board members."); *see also id.* ¶¶ 3, 15–16, 28, 99 (using variants of these names). The contract and addendum—attached as exhibits to the Amended Complaint—provide additional clarity: the former

identifies the contracting parties as "City of Hickory PHA (HHA) and Alanda K. Richardson" (Doc. No. 19-1 at 1), while the latter records them as "the City of Hickory Public Housing Authority (HPHA) and Alanda K. Richardson." (Doc. No. 19-2 at 1).[1]

The proper remedy for this mistake would be to amend the pleading, not dismiss it altogether. *See, e.g.*, *Goodman v. Praxair, Inc.*, 494 F.3d 458, 470–72 (4th Cir. 2007) (explaining the liberality of the relation-back doctrine); *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947) ("[I]f the right party is before the court, although under a wrong name, an amendment to cure a misnomer of parties will be allowed."). After drawing all reasonable inferences in Plaintiff's favor, the Court concludes that North Carolina law authorizes Plaintiff to sue HPHA.

**B. Section 1983 Claim**

Next, HPHA contests the adequacy of Plaintiff's § 1983 claim.[2] Specifically, HPHA argues that Plaintiff failed to plead two essential elements of such claims: "a

---

[1] Although the Court's analysis at this stage is "generally limited to a review of the allegations of the complaint itself," it "also consider[s] documents that are attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citing Fed. R. Civ. P. 10(c)).

[2] HPHA notes that Plaintiff's requested relief is somewhat ambiguous. *See* (Doc. No. 24 at 1 n.1). Page 13 of the Amended Complaint begins with a heading titled "Violation of 42 U.S.C. § 1983," followed by some factual allegations. *See* (Doc. No. 19 at 13). Near the bottom of page 13, there is a second heading, "Claims for Relief," accompanied by two subheadings and corresponding allegations: "Count I (Violation of 42 U.S.C. § 1981)" and "Count II (Breach of Contract)." *Id.* at 13, 15. HPHA's argument for dismissal "assumes Plaintiff intended to assert a claim for 'Violation of 42 U.S.C. § 1983' . . . ." (Doc. No. 24 at 1 n.1). Plaintiff's Response counters: "This is a simple breach of contract case with an additional claim under federal law, specifically § 1981 . . . . Plaintiff has pleaded both [§] 1983 and [§] 1981 claims as is required by law." (Doc. No. 25 at 1). HPHA did not file a reply.

Consistent with governing precedent—and as explained more thoroughly

specific constitutional right allegedly infringed" and "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." (Doc. No. 24 at 5–6 (first quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994), and then quoting *City of Canteen v. Harris*, 489 U.S. 378, 388–89 (1989))). Although the Court disagrees with HPHA's first argument, it agrees with the second. As set forth below, the Court will dismiss Plaintiff's § 1983 claim against both Defendants.

*1. Substantive Adequacy of Plaintiff's § 1983 Claim*

The Court begins with a substantive analysis. Plaintiff alleges the infringement of her rights under § 1981; to remedy that violation, she brings a claim under § 1983. Sections 1981 and 1983 are "closely related" statutes addressing "similar subjects." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 738–39 (1989) (Scalia, J., concurring in part and concurring in the judgment). The former "establishes an equal right to 'make and enforce contracts' regardless of race." *Chambers v. N.C. Dep't of Just.*, 66 F.4th 139, 141 (4th Cir. 2023) (quoting 42 U.S.C. § 1981(a)). The latter "creates an express right of action against state actors for the 'deprivation of any rights' that are 'secured by the Constitution and [federal] laws,' including § 1981." *Id.* (quoting 42 U.S.C. § 1983) (alteration in original).

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510

---

below—the Court interprets Plaintiff's asserted "violation[s]" of § 1981 and § 1983 as a single § 1983 claim that Plaintiff brings to vindicate the alleged infringement of her § 1981 rights. *See generally Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989). The Court will refer to this cause of action with the shorthand "§ 1983 claim."

U.S. 266, 271 (1994) (internal quotation marks omitted). "[W]hen suit is brought against a state actor," such as HPHA or the City, "§ 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.'" *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (quoting *Jett*, 491 U.S. at 733). Thus, "a plaintiff must use § 1983 as a vehicle to assert a § 1981 claim against a state actor," *Chambers*, 66 F.4th at 141, and the claim itself must satisfy the requirements of § 1983, *see Dennis*, 55 F.3d at 156 (explaining that § 1981 claims against municipalities must satisfy the criteria for *Monell* liability).

HPHA argues that two such requirements are absent here. First, it points to paragraph 117 of the Amended Complaint, which alleges "[t]hat the aforementioned acts of the Mayor and City Council deprived [Plaintiff] of a right secured by the Constitution and laws of the United States." (Doc. No. 19 ¶ 117). HPHA contends that this conclusory assertion does not satisfy *Albright*, in which the Supreme Court explained that "[t]he first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." (Doc. No. 24 at 5 (quoting 510 U.S. at 271)).

HPHA overreads *Albright*. "Section 1983 applies to violations of federal constitutional rights, as well as certain limited federal statutory rights." *Canady v. Buswell*, No. 3:13-CV-250-RJC, 2013 WL 2154812, at *1 (W.D.N.C. May 17, 2013); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (holding that a right must be "unambiguously conferred" by statute to support a § 1983 claim). Although plaintiffs most often bring § 1983 claims to vindicate their constitutional rights, the plain text of the statute covers "the deprivation of any rights . . . secured by the Constitution

and laws." 42 U.S.C. § 1983. "[T]he phrase 'and laws' means what it says . . . . [T]he § 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law." *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980).

Here, although the Amended Complaint alleges only an unspecified "right secured by the Constitution and laws of the United States" under the heading "Violation of 42 U.S.C. § 1983," it subsequently alleges under the subheading "Count I: Violation of 42 U.S.C. § 1981" that Defendants' "failure to pay [Plaintiff] is relegated to race-based decisions by the Mayor and City Council and the same falls under the governance of 42 U.S.C. § 1981." (Doc. No. 19 ¶¶ 117, 131). After reading the Amended Complaint in context, taking its factual assertions as true, and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff sufficiently pleaded the deprivation of a specific right protected by § 1981 and capable of being remedied by § 1983.

Nonetheless, the Court agrees with HPHA's second point: Plaintiff fails to adequately allege her rights were violated in accordance with municipal custom, policy, or practice. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In *Monell*, the Supreme Court "expressly cabined" municipal liability under § 1983—holding that it arises only when the municipality follows "a custom, policy, or practice by which local officials violate a plaintiff's [federal] rights." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014). This requirement "also controls in § 1981 actions against state entities." *Dennis*, 55 F.3d at 156.

"Importantly, municipal liability attaches only when the decision maker is the municipality's governing body, a municipal agency, or an official possessing final authority to create official policy. . . . [It] is not *respondeat superior* liability under a different moniker." *Howard v. City of Durham*, 68 F.4th 934, 952 (4th Cir. 2023) (italics added) (internal quotation marks omitted). Municipalities establish policies or customs in four ways:

> (1) Through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Id.* (citation modified).

Here, the Amended Complaint alleges "[t]hat the Mayor's acts and edicts aforementioned represented Defendant City of Hickory['s] policy and custom" because such behavior was "supported, approved, and ratified by the City Council." (Doc. No. 19 ¶¶ 120–21). This sort of municipal policy must fall under the second bucket: the decisions of a final policymaker.[3] *See Howard*, 68 F.4th at 952.

The Fourth Circuit recognizes "a marked difference between the authority to

---

[3] Another Fourth Circuit case, *Misjuns v. City of Lynchburg*, 139 F.4th 378 (2025), makes this point evident. Plaintiff cannot satisfy the first category because she "does not identify *what* policy or custom" the Mayor's acts expressed. *Id.* at 386. She cannot satisfy the third category because she claims Defendants acted intentionally. *See* (Doc. No. 19 ¶ 136). And she cannot satisfy the fourth category because "[t]he only facts that [she] alleged are regarding [her] own termination, and a custom cannot be established by proof alone of the single violation charged. Rather, there must be numerous particular instances of [unlawful] conduct to establish a custom or practice." *Misjuns*, 139 F.4th at 386 (citation and quotation marks omitted).

make final policy [and] the authority to make final implementing decisions." *Misjuns v. City of Lynchburg*, 139 F.4th 378, 385 (4th Cir. 2025) (quotation marks omitted). Relevant here, the mere exercise of a public official's "discretion to hire and fire employees" does not, without more, make that official the person "responsible for establishing [the municipality's] employment policy." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 n.12). At bottom, "[i]f an official's acts are subject to review or supervision by a municipal policymaker, . . . that official does not have final policymaking authority." *Id.*

In this case, the Amended Complaint alleges "[t]hat the Mayor's acts and edicts were supported, approved, and ratified by the City Council and as such, established its custom, policy, and practices." (Doc. No. 19 ¶ 121). Therefore, Plaintiff identifies the Mayor as the decisionmaker and the City Council as the final policymaker. The Amended Complaint also alleges "[t]hat the Defendants, separately and/or collectively[,] were under the control of the Mayor and the City Council." *Id.*¶ 118. By the Amended Complaint's own assertions, then, neither the Mayor nor Defendants are persons with final policymaking authority.

*Misjuns* is instructive. The plaintiff there, a recently terminated firefighter, had "alleg[ed] a mix of constitutional, statutory, and common law claims" against the city, its mayor and vice-mayor, and his former chief—the man who fired him after discovering his offensive social media posts. 139 F.4th at 381. The Fourth Circuit affirmed the district court's Rule 12(b)(6) dismissal. *Id.* Relevant here, the opinion squarely rejected the plaintiff's attempt to invoke *Monell* liability:

> As for a decision of a person with final policymaking authority, Misjuns argues that he "has plainly pleaded that Wormser had authority as Fire Chief to fire him and did so." However, having the authority to make personnel decisions, such as the decision to terminate Misjuns' employment, does not necessarily make Wormser "a person with final policymaking authority." . . . Accordingly, the fact that Wormser had the authority to fire Misjuns, [even though accomplished] pursuant to the City's Employment Policies and Procedures Manual, does not mean that he had final policymaking authority.
>
> Misjuns never alleged any facts to plausibly support that Wormser had final policymaking authority. In fact, his Complaint demonstrates the opposite, stating that [the mayor], [the vice-mayor], and Wodicka were "charged with handling personnel matters and enforcing the laws and policies of the City." He also alleged that Wormser took actions "in response to instructions from one or more of [the mayor], [the vice-mayor] and Wodicka." If an official's acts are subject to review or supervision by a municipal policymaker, as appears to be the case here, that official does not have final policymaking authority. Furthermore, merely stating the legal conclusion that Wormser had final policymaking authority does not make it so.
>
> The fact that Wormser had the authority to fire Misjuns does not equate to final policymaking authority sufficient to plead *Monell* liability.

*Id.* at 385 (citations and quotation marks omitted). For all these reasons, the Court concludes that Plaintiff fails to state a plausible § 1983 claim against HPHA. This claim is dismissed.

*2. Application to the Non-Movant*

On its own motion, the Court will also dismiss the identical § 1983 claim Plaintiff brings against the City, the non-moving party. A brief recitation of the procedural history is in order. Plaintiff sued two Defendants, the City and HPHA. *See* (Doc. No. 19 at 1). On February 20, 2026, the City filed its Answer to Plaintiff's

Amended Complaint. (Doc. No. 22). Four days later, HPHA filed the instant Motion. (Doc. No. 23). HPHA does not purport to act on the City's behalf; indeed, HPHA's primary argument for dismissal does not apply to the City. *See, e.g.*, (Doc. No. 24 at 3–4 ("Plaintiff's claims against the HPHA Board should be dismissed in their entirety. . . . As there is no statute that authorizes a suit against the HPHA Board, the HPHA Board is not an entity that may be sued.")).

Nonetheless, Plaintiff's claims against each Defendant overlap significantly. Plaintiff treats Defendants as interchangeable throughout her Amended Complaint. At times, she even treats them as a single entity. For instance, Count I of the Amended Complaint, "Violation of 42 U.S.C. § 1981," opens with an allegation that Plaintiff had a "contract with the HPHA." *Id.* ¶ 123. But other allegations within Count I attribute the same contractual breach to "the City," "the Defendants," and "Defendant." *Id.* ¶¶ 124–39; *see also, e.g.*, *id.* ¶ 130 ("The [C]ity has failed to pay [Plaintiff] all amounts due under the contract in the event there was a 'change in control' of the HPHA."). Count II, "Breach of Contract," is similarly ambiguous. *See id.* ¶¶ 141–46. Paragraph 141, the first substantive allegation within Count II, is perhaps the best example: it alleges "[t]hat a legally binding and enforceable contract existed between the [C]ity and [Plaintiff]"—directly contradicting Count I's assertion that Plaintiff contracted "with the HPHA." *Compare id.* ¶ 123, *with id.* ¶ 141.

This makes it difficult to determine which allegations and claims apply to which defendant. After closely scrutinizing the Amended Complaint, the City's Answer, HPHA's Motion to Dismiss and supporting Memorandum, and Plaintiff's

Response in objection thereto, the Court finds that there are no meaningful differences between Plaintiff's § 1983 claims against each party; that the same legal defects in the § 1983 claim against HPHA necessarily apply to the corresponding claim against the City; and that the § 1983 claim against the City must fail for the same reasons as the one against HPHA. Accordingly, the Court concludes that Plaintiff's § 1983 claim against the City is appropriately dismissed *sua sponte*.

The Fourth Circuit has recognized limited "instances in which '*sua sponte* dismissals of complaints under Rule 12(b)(6) are appropriate.'" *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002)). Before the Court may exercise this power, it must verify that the party moving for dismissal has "show[n] that the allegations contained in the complaint, taken in the light most favorable to the plaintiff, are patently meritless and beyond all hope of redemption." *Chute*, 281 F.3d at 319. The Court must also ensure that the plaintiff has been "afforded notice and an opportunity to amend the complaint or otherwise respond." *Robertson*, 989 F.3d at 291 (quoting *Chute*, 281 F.3d at 319). Crucially, however, "this does not mean that every *sua sponte* dismissal entered without prior notice" is improper. *Chute*, 281 F.3d at 319 (citation modified). "If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand." *Id.* (citation modified).

The Court finds that Plaintiff's § 1983 claim against the City lacks merit for the same reasons as the claim against HPHA: it fails to satisfy the requirements of *Monell* and its progeny. *See, e.g.*, *Misjuns*, 139 F.4th at 384–86. This is a fundamental

defect that prevents Plaintiff from raising the claim as a matter of law. The City's argument here would be identical to the one raised by HPHA—as would Plaintiff's response. As such, the Court concludes that *sua sponte* dismissal is appropriate. Plaintiff's § 1983 claim against the City, like her claim against HPHA, is dismissed.

### C. Breach of Contract

Having dismissed Plaintiff's federal causes of action, the Court in its discretion declines to exercise supplemental jurisdiction over the remaining state-law contract claims. *See* 28 U.S.C. § 1367; *Artis v. District of Columbia*, 583 U.S. 71, 74 (2018) ("When district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims."). These claims are dismissed without prejudice.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant HPHA's Motion to Dismiss (Doc. No. 23) is **GRANTED in part** and **DENIED in part**;
2. Plaintiff's federal claims are **DISMISSED**;
3. Plaintiff's state-law claims are **DISMISSED WITHOUT PREJUDICE**; and
4. The Clerk is directed to close this case.

**SO ORDERED.**

Signed: September 28, 2026

Matthew E. Orso
United States District Judge